UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JASON L. EDMONSON,

      Plaintiff,

v.

KINTON, RAHN, CHRISTOPHER STEVENS, ADAMS, ZANON, WARDEN CHERYL EPLETT, MICHELLE HAESE, DANIEL RADTKE, JEFFREY ANDERS, DR. MARLENA LARSON, KEVIN KALLAS, DANIEL LAVOIE, MICHAEL RIVERS, STEPHANIE HOVE, PAUL KEMPER, SARAH COOPER, AMY WOOLF, MARY MUSE, HAMILTON, and STEVENS,

      Defendants.

Case No. 23-CV-306-JPS

**ORDER**

---

  Plaintiff Jason L. Edmonson, an inmate confined at Green Bay Correctional Institution ("GBCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional and federal rights were violated. ECF No. 1. Plaintiff paid the filing fee in full on March 27, 2023. Prior to the Court screening the original complaint, Plaintiff filed an amended complaint on October 2, 2023, ECF No. 5. This Order screens Plaintiff's amended complaint as the operative complaint.

1.  **FEDERAL SCREENING STANDARD**

  Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

Page 2 of 12
Case 2:23-cv-00306-JPS   Filed 10/30/23   Page 2 of 12   Document 6

## 2. PLAINTIFF'S ALLEGATIONS

Plaintiff names a laundry list of prison officials as defendants in relation to his mental health treatment. ECF No. 5 at 1–3. On or about January 12, 2021, Plaintiff met with Defendant Kinton regarding a request he had filed about his mental health. *Id.* at 4. He informed Kinton that he was suffering from extreme anxiety/panic, serious depression, changes in mood, symptoms of post-traumatic-stress disorder, and obsessive-compulsive disorder. *Id.* Plaintiff also said these symptoms were interfering with his sleep, cognitive abilities, and daily activities. *Id.* Plaintiff said he believed his mental condition was related to contracting COVID-19 and that he was in the process of filing a lawsuit against staff for being exposed to the disease. *Id.* at 5. Plaintiff informed Kinton that he did not want to be placed on medication and instead requested a single-cell placement as a medical need. *Id.* Kinton denied his request for a single cell and instructed Plaintiff to fill out a form to meet with mental health staff as needed. *Id.*

On February 24, 2021, Plaintiff met with Defendant Rahn in response to a medical request. *Id.* Plaintiff provide Rahn with the same information that he has told Kinton concerning his mental condition. *Id.* On or about April 28, 2021, Plaintiff met with Defendant Stevens in response to a medical request and Plaintiff again provided him with the same medical information. *Id.* Plaintiff maintains that his medical condition constituted a serious medical need under the Eighth Amendment and that Kinton, Rahn, and Stevens failed to provide Plaintiff reasonable care. *Id.* at 6. Plaintiff also maintains that his condition constitutes a disability under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") and that these defendants discriminated against him by excluding him from services, programs, and activities. *Id.* As a result, Plaintiff incurred a

number of disciplinary dispositions and segregation stays and lost his medium security level status and was transferred to a maximum-security prison, GBCI, on or about September 15, 2021. *Id.*

Upon arrival to GBCI, Plaintiff began meeting with Defendant Woolf in response to his mental health condition. *Id.* at 7. Plaintiff again provided the same medical information to Woolf and again requested a single-cell placement as a medical need. *Id.* Woolf denied Plaintiff's request for a single cell and instead elevated Plaintiff's mental health level from a zero to one. *Id.* Woolf also told Plaintiff she was concerned about his anxiety and that she would be scheduling him to be seen for therapy every two to three weeks as soon as institution movement returned to normal. *Id.* On February 16, 2023, Plaintiff told Woof that he was in the process of filing this lawsuit. *Id.* Later that day, GBCI staff lowered Plaintiff's mental health level from one to zero. GBCI's staff has not met with Plaintiff since that time. *Id.*

Since May 1, 2023, Plaintiff has made approximately twenty-five requests to meet with GBCI's psychological staff to address his issue; Woolf responded that GBCI does not have space to meet with Plaintiff in-person in segregation. *Id.* at 8. On information and belief, Woolf was acting under the direction of Defendant Hamilton. *Id.* Plaintiff alleges that GBCI staff failed to provide him with reasonable care for his mental illness and serious medical need. *Id.*

Defendants Kinton, Rahn, Stevens, and Woolf each provided Plaintiff with unreasonable mental health care and were deliberately indifferent to his serious medical need. *Id.* at 10. Defendants Adams, Zanon, and Eplett failed to curb the known pattern of OSCI's psychological staff providing inmates with unreasonable mental health treatment. *Id.* Defendants Hamilton, Haese, Radtke, and Stevens failed to curb the known

pattern of GBCI's psychological staff providing unreasonable mental health care. *Id.* Defendants Rivers, Anders, LaVoie, Kallas, Larson, Muse, Hove, Kemper, and Cooper failed to curb the known pattern of inmates being provided unreasonable mental health care in the Department of Correction's institutions. *Id.* at 11.

3.  **ANALYSIS**

First, the Court finds that Plaintiff may not proceed on an Eighth Amendment claim for deliberate indifference to his medical needs. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640).

Here, the Court finds that Plaintiff's allegations do not rise to the level of an Eighth Amendment deliberate indifference claim. First, as to

Defendants Kinton's, Rahn's, Stevens's, and Woolf's refusal to provide Plaintiff with a single cell for his mental health, Plaintiff's allegations do not rise to the level of an Eighth Amendment violation. Plaintiff summarily decided on his own that his mental health required no medication and instead that he needed single-cell status. Plaintiff does not, however, get to dictate the specific medical treatment that he receives; instead, medical professionals must use their own professional judgment in determining appropriate treatment. Disagreement between a prisoner and his medical provider, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Even at the lenient pleading stage, the Court finds that Plaintiff's disagreement with these defendants' medical decisions does not rise to the level of an Eighth Amendment claim.

As to Defendant Woolf, Plaintiff comes closer to stating a claim, but the Court finds that Plaintiff does not provide sufficient detail to discern an Eighth Amendment violation. Plaintiff alleges that since May 1, 2023, Plaintiff has made approximately twenty-five requests to meet with GBCI's psychological staff and Woolf responded that GBCI does not have space to meet with Plaintiff in person. It is unclear what, if any, treatment Plaintiff received in response to his medical requests. If Plaintiff could not receive mental health treatment in person while in segregation, was he receiving it virtually? It is unclear if Woolf was personally involved with or aware of Plaintiff's various requests for medical attention. As such, the Court finds that the amended complaint lacks sufficient detail to state an Eighth Amendment claim against Woolf. Finally, as to the remaining defendants, Plaintiff does not plead facts showing their personal involvement in

denying him medical care. For a prison official to be personally liable, he or she must have participated in some way with the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks and citation omitted); *see also Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). In sum, the Court finds that Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to a serious medical need against any defendants.

Second, the Court finds that Plaintiff may not proceed on ADA or RA claims. Title II of the Americans with Disabilities Act (ADA) "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability" and applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. § 12132). To establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability.'" *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132). Analysis under the Rehabilitation Act (RA), 29 U.S.C. § 794, is essentially the same except that the RA includes an additional element requiring that the entity denying access receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (ADA and RA standards are "functionally identical").

Page 7 of 12
Case 2:23-cv-00306-JPS    Filed 10/30/23    Page 7 of 12    Document 6

"[B]ecause the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations," a plaintiff may not sue defendants in their individual capacities – the proper defendant is the organization, or the individual in his or her official capacity. *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds). Like the ADA, the RA has been interpreted to preclude suits against officials in their individual capacities. *See Boston v. Dart*, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (citing *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 624, 644 (7th Cir. 2015)).

> The term "qualified individual with a disability" means,
>
> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131. The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The ADA is not violated when prison officials fail to "attend to the medical needs of ... disabled prisoners." *Resel v. Fox*, 26 F. App'x 572, 576–77 (7th Cir. 2001) (quoting *Bryant v. Madigan,* 84 F.3d 246,

Page 8 of 12
Case 2:23-cv-00306-JPS   Filed 10/30/23   Page 8 of 12   Document 6

249 (7th Cir. 1996)). A claim for inadequate medical treatment is improper under the ADA. *Id.*

Here, for purposes of screening, the Court accepts Plaintiff's factual allegation that his mental health conditions qualify him as individual with a disability. *See Wilke v. Cole*, 630 F. App'x 615, 616 (7th Cir. 2015) (noting Paruresis, "a type of social phobia that makes it difficult to urinate in the presence of others," could constitute disability under ADA). Plaintiff has, however, failed to allege any program or activity to which he was denied access because of his disability. As such, the Court finds that Plaintiff may not proceed on an ADA or RA claim.

### 4. CONCLUSION

In sum, the Court finds that the amended complaint fails to state a claim upon which relief may be granted. The Court will, however, allow Plaintiff the opportunity to submit a second amended complaint on or before **November 20, 2023.** When writing his second amended complaint, Plaintiff should provide the Court with enough facts to answer the following questions: (1) Who violated his constitutional rights?; (2) What did each person do to violate his rights?; (3) Where did each person violate his rights?; and (4) When did each person violate his rights? Plaintiff's second amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and each Defendant with notice of what each Defendant allegedly did or did not do to violate his rights.

The Court is enclosing a copy of its amended complaint form and instructions. Plaintiff must list all of the defendants in the caption of his second amended complaint. He should use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring,

Page 9 of 12
Case 2:23-cv-00306-JPS    Filed 10/30/23    Page 9 of 12    Document 6

and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, Plaintiff may use up to five additional sheets of paper.

Plaintiff is advised that the second amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." An amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If a second amended complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915A.

Accordingly,

**IT IS ORDERED** that the amended complaint fails to state a claim;

**IT IS FURTHER ORDERED** that Plaintiff may file a second amended complaint that complies with the instructions in this Order on or before **November 20, 2023**. If Plaintiff files a second amended complaint by the deadline, the Court will screen that complaint under 28 U.S.C. § 1915A. If Plaintiff does not file a second amended complaint by the deadline, the Court will dismiss this case based on his failure to state a claim in his amended complaint and will issue him a "strike" under 28 U.S.C. § 1915(g); and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guides entitled

"Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 30th day of October, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.