UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JASON L. EDMONSON,<br><br>      Plaintiff,<br>v.<br><br>KINTON, RAHN, CHRISTOPHER STEVENS, ADAMS, ZANON, WARDEN CHERYL EPLETT, MICHELLE HAESE, DANIEL RADTKE, JEFFREY ANDERS, DR. MARLENA LARSON, KEVIN KALLAS, DANIEL LAVOIE, MICHAEL RIVERS, STEPHANIE HOVE, PAUL KEMPER, SARAH COOPER, AMY WOOLF, MARY MUSE, HAMILTON, and STEVENS,<br><br>      Defendants. | Case No. 23-CV-306-JPS<br><br>**ORDER** |

  Plaintiff Jason L. Edmonson, an inmate confined at Green Bay Correctional Institution ("GBCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional and federal rights were violated. ECF No. 1. On October 30, 2023, the Court screened Plaintiff's amended complaint, found that it failed to state a claim, and allowed Plaintiff the opportunity to file a second amended complant. ECF No. 6. Plaintiff filed a second amended complaint on November 3, 2023. ECF No. 7. This Order screens Plaintiff's second amended complaint.

**1. FEDERAL SCREENING STANDARD**

  Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity

or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## 2. PLAINTIFF'S ALLEGATIONS

Plaintiff's second amended complaint names a laundry list of prison officials as defendants in relation to his mental health treatment and does not meaningfully change his factual allegations from his last pleading. *See* ECF Nos. 5, 7. On or about January 12, 2021, Plaintiff met with Defendant Kinton regarding a request he had filed about his mental health. ECF No. 7 at 4. He informed Kinton that he was suffering from extreme anxiety/panic, serious depression, changes in mood, symptoms of post-traumatic-stress disorder, and obsessive-compulsive disorder. *Id.* Plaintiff also said these symptoms were interfering with his sleep, cognitive abilities, and daily activities. *Id.* Plaintiff said he believed his mental condition was related to contracting COVID-19 and that he was in the process of filing a lawsuit against Oshkosh Correctional Institution ("OSCI") staff for being exposed to the disease. *Id.* at 5. Plaintiff informed Kinton that he did not want to be placed on medication and instead requested a single-cell placement as a medical need. *Id.* Kinton denied his request for a single cell and instructed Plaintiff to fill out a form to meet with mental health staff as needed. *Id.*

On February 24, 2021, Plaintiff met with Defendant Rahn in response to a medical request. *Id.* Plaintiff provided Rahn with the same information that he had told Kinton concerning his mental condition. *Id.* On or about April 28, 2021, Plaintiff met with Defendant Stevens in response to a medical request, and Plaintiff again provided him with the same medical information. *Id.* Plaintiff maintains that his medical condition constituted a serious medical need under the Eighth Amendment and that Kinton, Rahn, and Stevens failed to provide Plaintiff reasonable care. *Id.* at 6. Plaintiff also maintains that his condition constitutes a disability under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") and that

these defendants discriminated against him by excluding him from services, programs, and activities. *Id.* As a result, Plaintiff incurred a number of disciplinary dispositions and segregation stays and lost his medium security level status and was transferred to a maximum-security prison, GBCI, on or about September 15, 2021. *Id.*

Upon arrival to GBCI, Plaintiff began meeting with Defendant Woolf in response to his mental health condition. *Id.* at 7. Plaintiff again provided the same medical information to Woolf and again requested a single-cell placement as a medical need. *Id.* Woolf denied Plaintiff's request for a single cell and instead elevated Plaintiff's mental health level from a zero to one. *Id.* Woolf also told Plaintiff she was concerned about his anxiety and that she would be scheduling him to be seen for therapy every two to three weeks as soon as institution movement returned to normal. *Id.* On February 16, 2023, Plaintiff told Woolf that he was in the process of filing this lawsuit. *Id.* Later that day, GBCI staff lowered Plaintiff's mental health level from one to zero. GBCI's staff has not met with Plaintiff since that time. *Id.*

Since May 1, 2023, Plaintiff has made approximately twenty-five requests to meet with GBCI's psychological staff to address his issue; Woolf responded that GBCI does not have space to meet with Plaintiff in-person in segregation. *Id.* at 8. On information and belief, Woolf was acting under the direction of Defendant Hamilton. *Id.* Plaintiff alleges that GBCI staff failed to provide him with reasonable care for his mental illness and serious medical need. *Id.*

Defendants Kinton, Rahn, Stevens, and Woolf each provided Plaintiff with unreasonable mental health care and were deliberately indifferent to his serious medical need. *Id.* at 9. Defendants Adams, Zanon, and Eplett failed to curb the known pattern of OSCI's psychological staff

providing inmates with unreasonable mental health treatment. *Id.* Defendants Hamilton, Haese, Radtke, and Stevens failed to curb the known pattern of GBCI's psychological staff providing unreasonable mental health care. *Id.* Defendants Rivers, Anders, LaVoie, Kallas, Larson, Muse, Hove, Kemper, and Cooper failed to curb the known pattern of inmates being provided unreasonable mental health care in the Department of Correction's institutions. *Id.* at 11.

### 3. ANALYSIS

As mentioned above, Plaintiff failed to make meaningful changes to his factual allegations after receiving the Court's guidance in the prior screening order. For completeness, the Court reiterates the analysis from the prior screening and finds that the second amended complaint fails to state a claim upon which relief may be granted.

First, the Court finds that Plaintiff may not proceed on an Eighth Amendment claim for deliberate indifference to his medical needs. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or

Page 5 of 11
Case 2:23-cv-00306-JPS   Filed 03/21/24   Page 5 of 11   Document 8

unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640).

Here, the Court finds that Plaintiff's allegations do not rise to the level of an Eighth Amendment deliberate indifference claim. First, as to Defendants Kinton's, Rahn's, Stevens's, and Woolf's refusal to provide Plaintiff with a single cell for his mental health, Plaintiff's allegations do not rise to the level of an Eighth Amendment violation. Plaintiff summarily decided on his own that his mental health required no medication and instead that he needed single-cell status. Plaintiff does not, however, get to dictate the specific medical treatment that he receives; instead, medical professionals must use their own professional judgment in determining appropriate treatment. Disagreement between a prisoner and his medical provider, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Even at the lenient pleading stage, the Court finds that Plaintiff's disagreement with these defendants' medical decisions does not rise to the level of an Eighth Amendment claim.

As to Defendant Woolf, Plaintiff comes closer to stating a claim, but the Court finds that Plaintiff does not provide sufficient detail to discern an Eighth Amendment violation. Plaintiff alleges that since May 1, 2023, Plaintiff has made approximately twenty-five requests to meet with GBCI's psychological staff and Woolf responded that GBCI does not have space to meet with Plaintiff in person. It is unclear what, if any, treatment Plaintiff

Page 6 of 11
Case 2:23-cv-00306-JPS    Filed 03/21/24    Page 6 of 11    Document 8

received in response to his medical requests. If Plaintiff could not receive mental health treatment in person while in segregation, was he receiving it virtually? It is further unclear if Woolf was personally involved with or aware of Plaintiff's various requests for medical attention. As such, the Court finds that the second amended complaint lacks sufficient detail to state an Eighth Amendment claim against Woolf. Finally, as to the remaining defendants, Plaintiff does not plead facts showing their personal involvement in denying him medical care. For a prison official to be personally liable, he or she must have participated in some way with the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks and citation omitted); *see also Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). In sum, the Court finds that Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to a serious medical need against any defendants.

Second, the Court finds that Plaintiff may not proceed on ADA or RA claims. Title II of the Americans with Disabilities Act (ADA) "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability" and applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. § 12132). To establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability.'" *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560

(7th Cir. 1996) (quoting 42 U.S.C. § 12132). Analysis under the Rehabilitation Act (RA), 29 U.S.C. § 794, is essentially the same except that the RA includes an additional element requiring that the entity denying access receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (ADA and RA standards are "functionally identical").

"[B]ecause the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations," a plaintiff may not sue defendants in their individual capacities – the proper defendant is the organization, or the individual in his or her official capacity. *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds). Like the ADA, the RA has been interpreted to preclude suits against officials in their individual capacities. *See Boston v. Dart*, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (citing *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 624, 644 (7th Cir. 2015)).

> The term "qualified individual with a disability" means,
>
> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131. The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating,

sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The ADA is not violated when prison officials fail to "attend to the medical needs of ... disabled prisoners." *Resel v. Fox*, 26 F. App'x 572, 576–77 (7th Cir. 2001) (quoting *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996)). A claim for inadequate medical treatment is improper under the ADA. *Id.*

Here, for purposes of screening, the Court accepts Plaintiff's factual allegation that his mental health conditions qualify him as individual with a disability. *See Wilke v. Cole*, 630 F. App'x 615, 616 (7th Cir. 2015) (noting Paruresis, "a type of social phobia that makes it difficult to urinate in the presence of others," could constitute disability under ADA). Plaintiff has, however, failed to allege any program or activity to which he was denied access because of his disability. As such, the Court finds that Plaintiff may not proceed on an ADA or RA claim.

### 4. CONCLUSION

In sum, the Court finds that the second amended complaint fails to state a claim upon which relief may be granted. Plaintiff was already provided the opportunity to amend his complaint based on the Court's guidance in the initial screening order, and he failed to amend his factual allegations in any meaningful way. The Court therefore finds that further amendment would be futile. *See Runnion ex rel. Runnion v Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). As such, the Court is obliged to dismiss this action for the failure to state a claim and will accordingly assess a "strike" under 28 U.S.C. § 1915(g).

Accordingly,

**IT IS ORDERED** that this case be and the same is hereby **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the failure to state a claim; and

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of March, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under limited circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.